**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | | |
|---|---|---|
| SANJAY PATEL, et al.,<br><br>Plaintiffs-Appellants<br><br>vs.<br><br>CITY OF SOUTH EL MONTE, a municipal corporation,<br><br>Defendant-Appellee. | ) | Case No. 21-55546<br><br>DC CV-18-04077-GW-SK<br><br>Northern District of California |

**APPELLANTS' OPENING BRIEF**

APPEAL FROM THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
HON. GEORGE H. WU , PRESIDING

FRANK A. WEISER
Attorney at Law
3460 Wilshire Blvd., Suite 1212
Los Angeles, CA 90010
(voice) - (213) 384-6964
(fax) - (213) 383-7368
(e-mail) - maimons@aol.com
Attorney for Plaintiffs-Appellants
SANJAY PATEL, SANJAY, a
California General Partnership

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ..... iii

I. STATEMENT OF JURISDICTION ..... 1

II. STATEMENT OF ISSUES PRESENTED ..... 1

III. STATEMENT OF THE CASE ..... 2

A. NATURE OF THE CASE ..... 2

B. APPEAL ..... 13

C. STANDARD OF REVIEW ..... 13

IV. SUMMARY OF THE ARGUMENT ..... 14

V. ARGUMENT ..... 15

A. THE LAW OF THE CASE DOCTRINE BARRED DISMISSAL AS THE PANEL HELD THAT THE WILLIAMSON COUNTY RIPENESS REQUIREMENT IS PRUDENTIAL AND WASWAIVED BY THE CITY ..... 15

B. THE SUPREME COURT'S HOLDING IN PAKDEL ALSO REQUIRES REVERSAL ..... 16

C. THERE IS A FUTILITY EXCEPTION TO THE RIPENESS REQUIREMENT THAT REQUIRES REVERSAL ..... 17

D. THE NINTH CIRCUIT DECISION IN THIS CASE CLEARLY REMANDED THE CASE FOR DISCOVERY REGARDING THE MERITS OF THE TAKINGS CLAIM NOT FOR A DETERMINATION OF THE PENN CENTRAL FACTORS OR PULLMAN ABSTENTION ON A FURTHER MOTION TO DISMISS ..... 19

E NOTWITHSTANDING THE NINTH CIRCUIT DECISION IN THIS CASE PULLMAN ABSTENTION WOULD STILL BE INAPPROPRIATE ........................................... 23

VI. CONCLUSION ........................................................................... 27

VII. STATEMENT OF RELATED CASES ........................................ 28

VIII. BRIEF FORMAT CERTIFICATION ......................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

Canton v. Spokane School District #81,
498 F.2d 840 (9th Cir. 1974) ....................24

Cedar Point Nursery v. Hassid,
141 S.Ct. 2063 (2021)....................20

City of Oakland v. Lynch,
798 F.3d 1159 (9th Cir. 2015) ....................15

Colorado River Water Conservation District v. United States,
424 U.S. 800 (1976)....................23

County of Allegheny v. Frank Mashuda Co.,
360 U.S. 185 (1959)....................24

England v. Louisiana State Board of Medical Examiners,
375 U.S. 411 (1964)....................26

Hall v. City of Los Angeles,
697 F.3d 1059 (9th Cir. 2012) ....................15

Hernandez v. City of El Monte,
138 F.3d 393 (9th Cir. 1998) ....................26

Honey v. Distelrath,
195 F.3d 531 (9th Cir. 1999) ....................25

Hoye v. City of Oakland,
653 F.3d 835 (9th Cir.2011) ....................22

Kaiser Aetna v. United States,
444 U.S. 164 (1979)....................21

Knick v. Township of Scott,
139. S.Ct. 2162 (2019)....................24

Lucas v. South Carolina Coastal Council,
505 U.S. 1003 (1992)....................18

MacDonald, Summer & Frates v. County of Yolo,
477 U.S. 340 (1986)....................17, 18

Miller v. Gammie,
335 F.3d 889 (9th Cir. 2003)....................16

Pakdel v. City & Cty of San Francisco,
952 F.3d 1157 (9th Cir. 2020)....................*passim*

Pakdel v. City and County of San Francisco,
141 S. Ct. 2226 (2021) (per curiam)....................*passim*

Penn Central Transp. Co. v. New York City,
438 U.S. 10 (1978)....................19, 20, 22

Quakenbush v. Allstate Ins. Co.,
517 U.S. 706 (1996)....................

Railroad Commission of Texas v. Pullman Co.,
312 U.S. 496 (1941)....................*passim*

San Remo Hotel v. City and County of San Francisco,
145 F.3d 1095 (9th Cir. 1998)....................22, 23, 24

San Remo Hotel v. City and County of San Francisco,
364 F.3d 1088 (9th Cir.2004)....................26

United Parcel Service v. California Pub. Utilities,
77 F.3d 1178 (9th Cir. 1996)....................26

Weinberg v. Whatcom County,
241 F.3d 746 (9th Cir. 2001)....................25

Williamson County Regional Planning Agency v. Hamilton Bank, 473 U.S. 172 (1985)....14, 15, 18

**STATUTES AND RULES**

28 U.S.C. § 1331 ....1

28 U.S.C. § 1291 ....1

28 U.S.C. § 1343(a) ....1

42 U.S.C. § 1983 ....*passim*

California Code of Civil Procedure § 1094.5 ....25

California Government Code § 53069.4....25

Federal Rule of Civil Procedure 12(b)(1) ....10, 11, 12

Federal Rule of Civil Procedure 12(b)(6) ....10, 11, 12

**CALIFORNIA CONSTITUTION**

Article I, § 19 ....26

**UNITED STATES CONSTITUTION**

Article I, § 10 ....10, 11

First Amendment....10

Fourth Amendment ....10, 11

Fifth Amendment ....*passim*

Fourteenth Amendment ....10, 11

**OTHER AUTHORITIES**

Erwin Chemerinsky, Federal Jurisdiction, (5th ed. 2007) ....23

## I. STATEMENT OF JURISDICTION[1]

The district court had subject matter jurisdiction pursuant to 42 U.S.C. §§ 1983 and 28 U.S.C. §1331 and 1343(a). A Judgment dismissing Appellant's claims brought under 42 U.S.C. § 1983 ("Judgment") was entered on May 11, 2021. (ER - 198-199 ; CT: 79). A timely notice of appeal and amended notice of appeal followed on May 27, 2021. (ER - 200-203; CT: 80-81).

Thus, this Court has jurisdiction over the appeal pursuant to 28 U.S.C. §1291.

## II. STATEMENT OF ISSUES PRESENTED

**A. WHETHER THE DISTRICT COURT ERRED IN GRANTING APPELLEE'S MOTION TO DISMISS APPELLANTS' TAKINGS CLAIM BROUGHT PURSUANT TO 42 U.S.C. §1983 REQUIRING THAT THE JUDGMENT BE REVERSED?**

[1] Appellant's Excerpts of Record consists of 1 volume and 213 pages. Henceforth, it shall be referred to as "ER". The Clerk's Transcript shall be referred to by the electronically filed document number following the designation of "CT".

## III. STATEMENT OF THE CASE

### A. NATURE OF THE CASE

Plaintiffs and Appellants SANJAY PATEL and SANJAY PATEL, a California General Partnership ("Appellants" or "Patel") appeal the Judgment in favor of Appellee City of South El Monte ("City").

This case arises under the federal Civil Rights Act, 42 U.S.C. §1983. The Appellants own and operate a Motel 6 in the City. (ER - 44:17-20; CT: 23).

On January 23, 2018, the City adopted Ordinance No. 1222-U (“Ordinance 1") as an interim ordinance prohibiting applications for business licenses, building permits, site plan reviews, conditional use permits, subdivision maps or any other land use entitlement, and prohibiting any automotive related uses within 500 feet from the 60 Freeway during the pendency by the City of a review and adoption of permanent zoning regulations regarding the matter. (ER- 45:20-28 to 46:1-2; CT: 23).

On March 8, 2018, the City adopted Ordinance No. 1224-U ("Ordinance 2"), extending Ordinance 1 prohibiting applications for business licenses, building permits, site plan reviews, conditional use permits, subdivision maps or any other land use entitlement, and prohibiting any automotive related uses within 500 feet from the 60 Freeway during the pendency by the City of a

review and adoption of permanent zoning regulations regarding the matter.(ER - 46 3-12 ; CT: 23).

Appellants have operated the motel, without being cited by the City previous to the adoption of Ordinances 1 and 2, and with City approval have permitted motel guests to park their vehicles on the motel parking lot incidental to the motel business. (ER - 46:13-17; CT: 23).

The motel caters to a variety of guests and customers, which include, but is not limited to, truckers traveling through and staying on a transient basis in the City. (ER - 46: 18-21; CT: 23).

The motel operates under a previously approved conditional use No. 96-470 ("CUP"), adopted by the City in 1996, that on its face, and as applied throughout the time that plaintiffs have owned and operated the motel does not restrict motel parking of guests and customers that park their trucks on the on the motel parking lot. (ER-46:22-28; CT: 23).

Aside from the CUP not restricting the motel parking of guests and customers that park their trucks on the on the motel parking lot, City Municipal Code Section 17.14.200 permits such activity on its face as it states in pertinent part: "Except as permitted by Section 17.14.200, all business operations in the commercial zone must be conducted entirely within a completely enclosed building. **However, automobile and light truck sales, automobile service**

**stations, outdoor dining, and other businesses, which by their nature, require operations outside of a building may be conducted outside of a building may be conducted outside of a building. Also, certain ancillary operations, . . ., may be conducted out of doors. . .**" (emphasis added). (ER - 47:1-16; CT: 23). At all times during the course of the CUP, the motel exists and is operating in a commercial zone. (ER - 47:17--19; CT: 23)

At all times during the course of the CUP, the motel exists and is operating next to two automobile service stations, operating under a Shell and Mobile franchise names ("S&M"), in a commercial zone that has been permitted by the City to allow parking and use of its lot for trucks similar in nature, size and structure as the guests and customers that park their trucks on the on the motel parking lot .(ER - 47 :20-26 to 48: 1; CT: 23) The automobile service stations are located within 500 feet of the 60 Freeway, and is in fact closer to the 60 Freeway than the motel. (ER - 66: 2-6; CT: 23)

After the adoption of Ordinance No. 1, City code enforcement officers came onto the motel at the area of the motel open to the public for check in and out as a guest, without plaintiffs consent or a court order, and demanded to inspect the motel registers which plaintiffs refused, and further went onto the motel parking lot open to guests, customers, and visitors and inspected trucks parked on the lot and issued plaintiffs a citation. The City by way of such code

enforcement officers cited plaintiffs with a code violation ("CV 1") pursuant to Ordinance 1 and plaintiffs filed a timely appeal of CV 1 with the City on March 8, 2018. .(ER: 48:2-18; CT: 23) The City failed and refused to provide plaintiffs with a administrative hearing regarding the issuance of CV 1. (ER - 48: 19-21; CT: 23) On March 8, 2018, Patel and his counsel attended the City Council hearing regarding adoption of Ordinance 2. (ER - 48: 22-24; CT: 23)

Appellants' counsel spoke at the hearing on March 8, 2018, and raised various constitutional challenges to Ordinance 2 and objected that in effect Ordinance 2 would only target the motel, which is in the only operating business subject to Ordinance 2, and thus would be in violation of the Bill of Attainder Clause of the U.S. Constitution. (ER - 48: 25-28 to 49: 1-5; CT: 23)

Appellants' counsel also just prior to the hearing on March 8, 2018, filed two letters with the City Clerk, Rose Juarez, and reemphasized at the time he spoke before the City Council on such date, warning the City Council that plaintiffs would not permit City code enforcement officers to come onto the motel, either in the private locked areas or the common public areas, without consent or a valid court order pursuant to their rights under the Fourth Amendment of the United States Constitution. (ER - 49: 6-14; CT: 23)

Shortly after the adoption of Ordinance 2, City code enforcement officers once again came onto the motel in the parking lot common area open only to the motel guests, customers and visitors to park their cars, on three separate days, without plaintiffs consent or a court order, and inspected trucks that were parked in the area and cited plaintiffs for violations of Ordinance 2. (ER - 49: 15-21; CT: 23)

The City by way of such code enforcement officers cited appellants with three additional code violations ("CV 2") pursuant to Ordinance 2 and appellants filed a timely appeal of CV 2 with the City. (ER - 49: 22-25; CT: 23). Initially, when appellants filed an appeal of CV 1 and 2, the City failed and refused to provide appellants with a meaningful administrative hearing regarding the issuance of CV 2. (ER - 49: 26-28 to 50: 1-2; CT: 23).

At such time, the City claimed that the appeals of CV1 and CV2, were at least in part untimely, a contention that appellants deny, and conditioned the hearing on any of the appeals on payment of the alleged fines prior to the appeal. (ER - 50: 3-8; CT: 23). Appellants' s counsel objected to the conditioning of the hearing of the appeals on payment of the alleged fines prior to the appeal. (ER - 50: 9-11; CT: 23). Without waiving the objection, appellants deposited $1.000.00 with the City regarding a hearing on one of the citations issued in CV2, Citation No. 1802, and the City conducted an

administrative hearing pursuant to the City municipal code. (ER - 68: 12-16; CT: 23). In doing so, the City unilaterally chose an outside contract hearing officer named Kevin Gres ("KG") that it has used numerous times in the past to hear City municipal code enforcement citation appeal hearings. (ER - 50: 17-20; CT: 23). Appellants claim that KG is paid by the City for each administrative citation appeal hearing he conducts for the City. (ER - 50: 21-23; CT: 23).

At the time of the hearing, KG demonstrated bias in favor of the City and against the plaintiffs; for example, when appellants s requested that the record on appeal be held open to allow submission of the letter appellants s submitted on March 8, 2018 to City Clerk Rose Juarez, as stated earlier, letters that are officially in the City administrative record regarding the appeal by plaintiffs and the adoption of Ordinance 2, KG summarily refused. (ER - 50: 24-28 to 51: 1-6; CT: 23). Further, there was no competent evidence to support a finding that on the dates of the Citation No. 1802, appellants were permitting trucks to park on the motel parking lot in violation of Ordinance 2. (ER - 51: 7-10; CT: 23).

At the hearing, appellants s objected that the evidence gathered by the City by way of the warrantless and non-consensual inspections of the motel. (ER - 51: 11-14; CT: 23).

Further, KG did not recuse himself as the hearing officer. (ER - 51: 15-16; CT: 23).

On August 14, 2018, KG issued a written decision in favor of the City and upholding Citation No. 1802 and giving the plaintiffs the right to appeal the decision to the Los Angeles Superior Court. Appellants appealed the decision by KG to the Los Angeles Superior Court, and contest both the evidence and the law that the City used to uphold the decision. (ER - 51: 17-25; CT: 23).

Appellants contend that just prior to the adoption of Ordinance 1, an adjacent property owner of the motel named MS & NC Investments, LLC, was attempting to open a truck dealership for the purposes of used truck sales on its property ("MS"). (ER - 52: 1-6; CT: 23). MS is a closed and fenced former Denny's restaurant and, on information and belief, MS has been closed and fenced and non-operational as a business for many years. (ER - : 7-9; CT: 23). MS is in the same commercial zone that the motel and the S&M is located in.
(ER - 52: 10-11; CT: 23).

In requesting a permit to operate a truck dealership on its property, MS was told by City officials that they did not want businesses of this type to open in the City. Shortly thereafter, the City adopted Ordinance 1. (ER - 52: 12-18; CT: 23).

Patel was told by a former City Councilman Joe Gonzalez ("JG") that the adoption of Ordinance 1 was adopted pursuant to a custom and practice of the City to adopt emergency ordinances that would prohibit permit applicants from be allowed permits for businesses that the City did not want opened and that the short time period in such ordinances was keyed to period of such applications. (ER - 52: 19-25; CT: 23).

Shortly after the adoption Ordinance 2, Patel went to City Hall to seek a hardship exemption application that is stated on the face of Ordinance 1. (ER - 52 : 26-28 to 53: 1-2; CT: 23). At the time of the City Council hearing of March 8, 2018, a City staff member had stated on the record that such an exemption existed under Ordinances 1 and 2. (ER - 53: 3-6; CT: 23). Pursuant to the statement and the language on the face of Ordinance 1, Patel went to City Hall to obtain the application form and to seek out more information about it. (ER - 53: 7-10; CT: 23).

At such time, Patel met City Planning Commissioner Manny Manchit ("MM") at City hall and MM stated to him that the only way his hardship exemption application would be approved by the City was if he gave up his CUP and ceased operating as a motel. (ER - 53: 11-15; CT: 23). In view of this threat, appellants are in fear and have not filed a hardship exemption application with the City, (ER - 53: 16-18; CT: 23).

As a result of the actions of the City, the motel has lost prior guests and customers who had contracts and agreements with them to park their trucks on the motel parking lot in the course of conducting the motel business. (ER - 53: 19-23; CT: 23).

Further, during the course of the City's actions the City has not enforced Ordinances 1 and 2 against S&M which at all times relevant herein have, and continue to allow truck parking on their properties. (ER - 53: 24-27 to 54: 1; CT: 23).

The appellants filed the instant action on May 15, 2018 against the City alleging a claim for relief under 42 U.S.C. §1983, claiming that the City's actions violated their federal constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution. (ER - 4-21; CT: 1).

On June 12, 2018, the City filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted. (ER - 206; CT: 10, 11).

On June 21, 2018, the Appellants filed a First Amended Complaint ("FAC") alleging that the City's actions violated their federal constitutional rights under 42 U.S.C. §1983 and under Article I, §10, clause 1 (Contracts

Clause), the Fourth, Fifth and Fourteenth Amendments of the United States Constitution (ER - 22-40; CT: 13).

On June 26, 2018, the district court found the City's motion to dismiss the complaint as moot. (ER - 41; CT: 14).

On July 5, 2018, the City filed a motion to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted. (ER - 206-207; CT: 15, 16).

On July 19, 2018, the appellants filed an opposition to the City's motion to dismiss the FAC. (ER - 207; CT: 17).

On July 26, 2018, the City filed a reply to the appellants' opposition to the City's motion to dismiss the FAC. (ER - 207; CT: 18).

On August 9, 2018, the district court granted the City's motion to dismiss the FAC without prejudice giving appellants leave to amend. (ER - 42; CT: 20).

On August 31, 2018, the appellants filed a Second Amended Complaint ("SAC"), once again alleging that the City's actions violated their federal constitutional rights under 42 U.S.C. §1983 and under Article I, §10, clause 1 (Contracts Clause), the Fourth, Fifth and Fourteenth Amendments of the United States Constitution (ER - 43-72; CT: 23).

Once again, on September 28, 2018, the City filed a motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted. (ER - 207-208; CT: 25, 26).

On October 18, 2018, the appellants filed an opposition to the City's motion to dismiss the SAC. (ER - 208; CT: 30).

On October 22, 2018, the City filed a reply to the opposition to the City' s motion to dismiss the SAC. (ER - 208 ; CT: 31).

On December 10, 2018, the district court continued the City's motion to dismiss the SAC requesting that the parties submit additional briefing, and then after hearing oral argument and issuing a tentative ruling issued a revised tentative ruling on January 10, 2019 in favor of the City and took the matter under submission . (ER - 77-108; CT: 35, 38).

On January 14 2019, the district court entered an Order of Dismissal of the entire action in favor of the City. (ER - 109-127; CT: 39).

An appeal followed on February 6, 2019. (ER - 128-129; CT: 40).

After briefing and oral argument, a panel of this Court issued a Memorandum Decision affirming the dismissal of all of the appellants' claims except the Takings claim under the Fifth Amendment. (ER- 130-137; CT: 44).

The panel rejected the City's argument that the Takings claim was not ripe holding that ripeness is prudential rather than jurisdictional, and that the City had waived the defense by not making the argument in the district court. (ER- 132-133; CT:44).

On remand, the City renewed the argument that the Takings claim was not ripe, and after multiple hearings on the issue, the district first dismissed the Takings claim on ripeness grounds but then issued the Judgment dismissing the claim without prejudice. (ER- 147-199; CT: 59, 60, 64, 77, 78, 79).

A timely notice of appeal and amended notice of appeal followed on May 27, 2021. (ER - 200-203; CT: 80-81).

**B. APPEAL**

A timely notice of appeal was filed on May 27, 2021, appealing the Judgment entered against the appellants on May 11, 2021 (ER: 198-202; CT: 79, 80, 81 ).Thus, this is an appeal by right.

**C. STANDARD OF REVIEW**

A district court order dismissing a complaint on a Takings claim on ripeness grounds is reviewed de novo. Pakdel v City and County of San Francisco, 952 F.3d 1157, 1162 (9th Cir. 2020) (reversed on other grounds by Pakdel v City and County of San Francisco, 141 S. Ct. 2226 (2021) (per curiam).

## IV. SUMMARY OF THE ARGUMENT

The federal civil rights Takings claim under 42 U.S.C. §1983 should not have been dismissed under the law of the case doctrine. The original panel that heard the first appeal was clear in its holding that the City waived any defense on ripeness grounds by not making the argument in the first instance in the district court. The panel the claim was to be litigated on its merits and proceed to the discovery stage.

Even if this were not the case, after the district court dismissed the claim on May 11, 2021, the United States Supreme Court in Pakdel held that owners did not have to comply with administrative procedures for seeking relief on a takings claim in order to satisfy the finality requirement under Williamson County Regional Planning Commission v Hamilton Bank, 473 U.S. 172 (1985), as the finality requirement is relatively modest, in that all a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question. The SAC clearly demonstrates this.

Even putting Pakdel aside, there is futility exception to the ripeness requirement that is raised by the SAC.

The panel clearly remanded the case for discovery not for a further motion to dismiss or for Pullman abstention which is inappropriate in this case.

Respectfully, the district court's dismissal should be reversed.

## V. ARGUMENT

### A. THE LAW OF THE CASE DOCTRINE BARRED DISMISSAL AS THE PANEL HELD THAT THE WILLIAMSON COUNTY RIPENESS REQUIREMENT IS PRUDENTIAL AND WAS WAIVED BY THE CITY

The law of the case doctrine prohibits a court from considering an issue that has been decided by the same court or a higher court in the same case. Hall v City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012).

In this case, the Ninth Circuit held and decided that the second ripeness prong of Williamson County Regional Planning Commission v Hamilton Bank of Johnson City, 473 U.S. 172 (1985), that "a takings claim challenging the application of land-use regulations [i]s not ripe until the government entity charged with implementing the regulations ha[s] reached a final decision regarding the application of the regulations to the property at issue," Pakdel v City. & Cty. of San Francisco, 952 F.3d 1157, 1163 (9th Cir. 2020), was waived "**because this ripeness rule is prudential, rather than jurisdictional, the City has waived it by not making this argument in the district court**." (ER-132-133; CT: 44) (citing Pakdel at 1169 and City of Oakland v Lynch, 798 F.3d 1159, 1163 n. 1 (9th Cir. 2015)) (emphasis added).

The ripeness argument was never made in the district court before the appeal .It was made for the first time on appeal, and after briefing had already been completed. (ER- 133; CT: 44).

Under the Ninth Circuit's well established case law, which is based on United States Supreme Court precedent, it was rightly rejected. See Miller v Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (holding that a panel may depart from the law of the circuit when "the relevant court of last resort . . . undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

Remarkably, the district court ignored the Ninth Circuit decision on appeal. That position is simply astounding and should be clearly rejected.

**B. THE SUPREME COURT'S HOLDING IN PAKDEL ALSO REQUIRES REVERSAL**

Assuming in arguendo that the law of the case doctrine would not apply, the ripeness argument should still be rejected.

In Pakdel, a divided panel of the Ninth Circuit took up the question of the scope of Williamson County's holding that a plaintiff may only challenge "final" governmental decisions. Pakdel, 141 S.Ct. 2229. While the majority concluded that the plaintiffs regulatory takings claim remained unripe because they never obtained a final decision regarding the application" of the regulation in question to their property, Judge Bea dissented, explaining that a "finality"

requirement looks only to whether the initial decisionmaker has arrived at a definitive position on the issue. In his view, an additional demand that plaintiffs follow the decisionmaker's administrative procedures would risk establishing an exhaustion requirement for a §1983 takings claim, something the law does not allow. Pakdel, 141 S.Ct. 2229 (internal quotation marks and citations omitted).

The Supreme Court agreed with the dissent in .Pakdel, holding that the Ninth Circuit's view of finality is incorrect. To quote the Court:

"The finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." Pakdel, 141 S.Ct. 2230 (internal quotation marks and citations omitted).

### C. THERE IS ALSO A FUTILITY EXCEPTION TO THE RIPENESS REQUIREMENT THAT REQUIRES REVERSAL

At oral argument before the Ninth Circuit panel in this case, there was extensive discussion with the panel as to whether a futility exception would apply. Although the panel did not have to settle the issue, there is such an exception.

In MacDonald, Summer & Frates v County of Yolo, 477 U.S. 340 (1986), Justice White writing for four members of the Court in dissent stated

that while "a landowner must pursue reasonably available avenues that might allow relief, it need not . . . take patently fruitless measures. Nothing in [this Court's cases] suggests that the decisionmaker's definitive position may be determined only from explicit denials of property-owner applications for development. Nor do these cases suggest that repeated applications and denials are necessary to pinpoint that position." Id., 477 U.S. at 359.

Subsequently, in Lucas v South Carolina Coastal Council, 505 U.S. 1003 (1992), a majority of the Supreme Court held that the property owner's failure to submit a plan for development was not a bar to reaching the merits of his takings claim, because "such a submission would have been pointless." Id., 505 U.S. at 1012, n.3.

Clearly, a futility exception to the Williamson County ripeness requirement exists, and as was argued before the Ninth Circuit panel, the SAC raises factual issues in this regard that cannot not be resolved on a motion to dismiss. The SAC pleads multiple, specific facts of extensive code enforcement by the City to enforce ordinance nos. 1222-U and 1224-U that resulted in various citations against the appellants, and significantly, pleads that after the adoption of ordinance no. 1224-U, Appellant Sanjay Patel went to City Hall to seek a hardship exemption application under the ordinances and

met City Planning Commissioner Manny Mamchit at City Hall who stated to Mr. Patel that the only way his hardship exemption application would be approved by the City was if he gave up his conditional use permit to operate a motel at the subject property. The SAC goes on to plead that in view of this threat, the appellants "are in fear and have not filed a hardship exemption application with the City." (ER- 45: 20-28 to 53:1-18)

As was argued before the Ninth Circuit panel, these allegations raise factual issues and a plausible claim that the futility exception applies in this case. The issue cannot be resolved on a motion to dismiss.

The original panel never had to reach the issue because of the clear waiver of the ripeness issue by the City. But if such an issue would have to be decided, it would have to be decided at the summary judgment stage or at trial, not on a motion to dismiss.

### D. THE PANEL DECISION IN THIS CASE CLEARLY REMANDED THE CASE FOR DISCOVERY REGARDING THE MERITS OF THE TAKINGS CLAIM NOT FOR A DETERMINATION OF THE PENN CENTRAL FACTORS OR PULLMAN ABESTENTION ON A FURTHER MOTION TO DISMISS

The Memorandum Decision was that that it was remanding the case for further discovery on the matter not for a further motion to dismiss

To quote the Memorandum Decision:

"It is not clear from the limited record before us that the City was concerned about trucks belonging to overnight guests, but we cannot say, at this motion to dismiss stage, that Patel's allegations contradict the judicially noticed documents, including the 'notice of violation' and the citations that the City issued Patel, because the documents are sufficiently vague. **We expect this can be sorted out in discovery as it may become relevant to the takings claim which we are remanding**, but for now we do not need to address that matter further." ) (ER-131; CT: 44).

Regulatory takings challenges are governed by the standards set forth in Penn Central Transp. Co. v New York City, 438 U.S. 104 (1978). The Court in Penn Central acknowledged that it had hitherto been 'unable to develop any 'set formula' ' for evaluating regulatory takings claims, but identified 'several factors that have particular significance." Id., 544 U.S. at 538. The Court went on to discuss the primary Penn Central factors that a court must balance, among them being the economic impact of the regulation on the claimant, and particularly the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the government action. Id., 544 U.S. 538.

The Court in Penn Central referred to the analysis of these factors as "**essentially ad hoc factual inquiries**." Id., 438 U.S. at 124 (emphasis added). This cannot be decided on a motion to dismiss.

The City's evisceration of Plaintiffs' right of access to their motel can also be viewed as a per se taking. See Cedar Point Nursery v Hassid, 141 S.Ct.

2063 (2021) (Court held that a regulation that required agricultural employers to allow labor organizers to regularly access their property for the purposes of union recruitment constituted a per se taking under the Fifth Amendment as the right of access is an essential component in ownership of property); see also ; Kaiser Aetna v United States, 444 U.S. 164, 179-80 (1979) (stating that the right to exclude others is one of the "essential sticks": in the bundle of property rights).

In this case, the SAC alleges that prior to the adoption of the ordinances, appellants had both a practice with City approval and by way of their conditional use permit ("CUP") permitted trucks to park at the motel and which explicitly states, (ER- 46: 13-28 to 47: 1-2, 69-72; CT: 23) that the one of the reasons that the CUP was being granted to the motel was: **"[b]ecause of the motel's easy access to the Pomona Freeway and the large parking lot, the motel is popular with truckers**." (emphasis added).

The original panel was correct that the interpretation of the judicially noticed documents and the citations that the City issued the appellants requires discovery on the matter. If there was an entitlement prior to the adoption of the ordinances, this would be a basis for an argument per se taking. But this issue requires discovery to clarify the matter.

Even if the issue is not analyzed as a per se taking, under Penn Central the multi-factored test ”is [analyzed] essentially [as an] ad hoc factual inquir[y],” Id., 438 U.S. at 124, which would also preclude a determination of the claim on a motion to dismiss. Regardless of the City’s argument as to the character of the regulations in question, this is only one of the multi factors to be considered under Penn Central. But as the Ninth Circuit held, how the ordinances apply to the motel cannot be decided merely by judicial notice. The “essential ad hoc factual inquiry” under Penn Central, especially in light of the panel decision, cannot decide the merits of the claim on a motion to dismiss.

The Ninth Circuit also did not remand the case to consider whether the Court should exercise Pullman abstention. It could have decided the issue itself sua sponte but elected not to do so. See San Remo Hotel v City and County of San Francisco, 145 F.3d 1095, 1104-1105 (9th Cir. 1998). Further, the City never raised the issue on appeal although it could have done so even if it had not raised the issue in this Court prior to the appeal. Id., at 1104-1105.

With the Ninth Circuit ruling on the ripeness issue and on the merits as to the other claims, this case has moved beyond the embryonic stages of the litigation which generally ceases to permit a district court to exercise abstention. See Hoye v City of Oakland, 653 F.3d 835, 844 (9th Cir.2011).

Federal Courts have a "virtually unflagging obligation" to exercise the jurisdiction vested in them by Congress. Colorado River Water Conservation Dist.v United States, 424 U.S. 800, 817 (1976).

This case was commenced on May 15, 2018. (ER - 4-21; CT: 1).

In light of the panel's instructions on remand, and the City's failing to press the issue on first appeal, coupled with the fact that that there has been substantial and lengthy proceedings on the merits, Pullman abstention is inappropriate. See also Erwin Chemerinsky, Federal Jurisdiction, 790-97 (5th ed. 2007) (discussing that Pullman abstention is appropriate only in limited circumstances).

**E. NOTHWITHSTANDING THE NINTH CIRCUIT DECISION IN THIS CASE PULLMAN ABSTENTION WOULD STILL BE INAPPROPRIATE**

Even if the Court were to disregard the Ninth Circuit decision, Pullman abstention is appropriate only when (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear. See San Remo Hotel, 145 F.3d at 1104; see also Quakenbush v. Allstate Ins. Co., 517 U.S. 706, 716-717 (1996) (Pullman abstention proper "in

which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law").

A federal court may postpone the exercise of its jurisdiction "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959); San Remo Hotel, 145 F.3d at 1104.

Earlier cases in this circuit have worded this requirement in stronger language than San Remo Hotel, stating that in applying the Pullman abstention criteria the second requirement is that "[s]uch constitutional adjudication **plainly can be avoided** if a definitive ruling on the state issue could terminate the controversy." Canton v. Spokane School District #81, 498 F.2d 840, 845 (9th Cir. 1974) (quoting Pullman) (internal citations and quotation marks omitted) (emphasis added).

This requirement cannot be satisfied in this case.

First, under Knick v Township of Scott, 139 S.Ct.. 2162 (2019), the federal takings claim is no longer contingent on a state constitutional takings claim.

Second, while the appellants did file an inverse condemnation claim in the Los Angeles Superior Court after the case was first dismissed and the City

cross-complained under a theory of public nuisance, after this case was dismissed, the parties stipulated to dismiss the state case without prejudice in order to await the outcome of this appeal.

The appeal of the citations in state court remains to be hear but this circuit holds that an administrative mandamus proceeding under California Code of Civil Procedure §1094.5 is a "special proceeding" and not regarded as an action at all, and thus does not bar a 42 U.S.C. § 1983 claim. See Weinberg v. Whatcom County, 241 F.3d 746, 750 (9th Cir. 2001) ("'the state proceeding was a mandamus action, the ordinary claim preclusion rules that bar parties from relitigating claims already decided by courts on the merits do not apply here [with regard to claims made under 42 U.S.C. § 1983].'"); Honey v. Distelrath, 195 F.3d 531, 533 (9th Cir. 1999) (same).

The appeal of the citation under Government Code §53069.4 is like a §1094.5 action a "special proceeding," and therefore under Ninth Circuit case law has no preclusive effect on a 42 U.S.C. § 1983 claim. .See County of Humboldt v Appellate Division of the Superior Court of Humboldt County, 46 Cal.App.5th 298 (2020).

Notwithstanding this, Plaintiffs could also avoid any mootness or preclusive effect of the citation appeal as to the § 1983 claim by filing an

England reservation in state court which is what they would do if forced to litigate the state supplemental claims in state court. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 415 (1964); United Parcel Service v. California Pub. Utilities, 77 F.3d 1178, 1184 (9th Cir. 1996)("More significantly, for our purposes, this circuit has not required litigants to file first in federal court to reserve the right to a hearing under England.").

Thus, not only would the federal claims not be mooted or narrowed, once again, as argued earlier, one of the main principles served by the Pullman abstention doctrine, the avoidance of deciding constitutional issues, would not be satisfied.

As to the state inverse condemnation action, the Ninth Circuit, citing California Supreme Court precedent, holds that the California Constitution's Takings Clause under Article I, § 19 is congruent to the Federal Fifth Amendment Takings Clause. See San Remo Hotel v City and County of San Francisco, 364 F.3d 1088 (9th Cir. 2004). Since the 42 U.S.C. § 1983 claim is a federal remedy supplemental to any available state remedy, the Ninth Circuit has even held that one may file two parallel § 1983 claims in federal and state court at the same time. See Hernandez v City of El Monte, 138 F.3d 393 (9th Cir. 1998).

Thus, the state law issues will not moot or narrow the federal takings claim issue.

Even without the Ninth Circuit decision, Pullman abstention would not be appropriate.

## II. CONCLUSION

For all the foregoing reasons, Appellants s respectfully request that the Judgment be reversed for trial on their Takings claim.

DATED: September 19, 2021 Respectfully submitted

LAW OFFICES OF FRANK A. WEISER

/s/ Frank A. Weiser

By:________________________
FRANK A. WEISER, Attorney for
Plaintiffs SANJAY PATEL; SANJAY,
a California General Partnership

## VII. STATEMENT OF RELATED CASES

Appellants and their counsel of record hereby certify that there is no related case pending in this Court within the meaning of the Rules of the United States Court of for the Ninth Circuit. .

DATED: September 19, 2021 Respectfully submitted

LAW OFFICES OF FRANK A. WEISER

/s/ Frank A. Weiser

By:_________________________
FRANK A. WEISER, Attorney for
Plaintiffs SANJAY PATEL; SANJAY,
a California General Partnership

## VIII. BRIEF FORMAT CERTIFICATION

Pursuant to Ninth Circuit Rules, I certify that I typed the attached Appellants' Opening Brief, which is monospaced, has 10.0 characters per inch and does not exceed 29 pages in length, and consists of 5,919 words, excluding the table of contents and table of authorities, as counted.

DATED: September 19, 2021 Respectfully submitted

LAW OFFICES OF FRANK A. WEISER

/s/ Frank A. Weiser

By:________________________
FRANK A. WEISER, Attorney for
Plaintiffs SANJAY PATEL; SANJAY,
a California General Partnership